IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CR. No.: 2:09-cr-128-MEF |
| | ) | |
| RASHEEN JAHMAL SMITH | ) | |

## REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE

This cause is before the Court on a *Motion to Suppress and Citations of Authority* (Doc. 28, filed September 28, 2009) filed by Defendant Rasheen Jahmal Smith ("Defendant" or "Smith").[1]  The United States filed its *Response to Motion to Suppress* (Doc. 35, filed October 13, 2009).  An evidentiary hearing was conducted on October 27, 2009.  The parties also filed a *Post-Hearing Supplement on Defendant's Motion to Suppress* (Doc. 51, filed October 30, 2009) and *Supplemental Response to Motion to Suppress* (Doc. 53, filed November 3, 2009).  After due consideration of the briefs, arguments, and applicable law, the Magistrate Judge concludes the warrantless search passes Constitutional muster and recommends that the District Court **DENY** the motion to suppress with the exception of the statements made after the November 2008 search, which undersigned recommends **SUPPRESSION** of those statements.

---

[1]      The Court granted Defendant's *Motion for Leave to Correct Motion to Suppress* (Doc. 43, filed October 26, 2009).

## I. Factual Background and Motion to Suppress

Smith is charged in a four count indictment with possession with the intent to distribute crack cocaine, possession of marijuana, and possession of a firearm in furtherance of a drug-trafficking crime. Each charge stems from two separate traffic stops which occurred on November 6, 2008 and January 20, 2009. Each stop will be discussed below.

### A.   November 6, 2008 Traffic Stop

On November 6, 2008, Alabama State Troopers Tracey McCord and Phillip Faulkner stopped Smith on Alabama Highway 10 when Trooper McCord saw Smith's window tinting was darker than Alabama law allows. A tint meter confirmed that the tint was too dark. While he was looking for his insurance, Smith told the officers he had a firearm in the car and that he had a license for it. Trooper McCord testified that while talking to Smith he detected the odor of green marijuana coming from the vehicle. At this stage, Trooper McCord asked Smith to exit the vehicle and conducted a pat down of Smith. Trooper McCord then asked Smith about the smell of marijuana. Smith tried to flee, but advanced only a few feet before being tackled by the troopers. Because he continued to struggle, Trooper McCord first warned and then shot Smith with a taser which subdued him to where they could handcuff him. Troopers McCord and Faulkner conducted another search of Smith and found approximately 2 grams of marijuana, 12-14 grams of crack cocaine, and a set of scales in the front pocket of Smith's pants. The police removed the taser prongs and placed Smith in the police car. An additional bag of cocaine was found in the center console of

Smith's vehicle.  The troopers also found a 9 millimeter handgun along with 13 rounds of ammunition between the front seat and center console.

While waiting for a supervisor to arrive, Trooper McCord asked Smith his age and then inquired as to what Smith had been doing.  The clear implication of the question was to inquire as to what motivated Smith to possess the contraband.  Smith responded to the questions by Trooper McCord.  No *Miranda* warnings were given to Smith at that time even though Smith was clearly not free to leave.  Smith was cited for a window tint violation and arrested for possession of a controlled substance, possession of marijuana, and resisting arrest.

**B.    January 20, 2009 Traffic Stop**

On January 20, 2009, Trooper McCord, Trooper Terry Nelson, Barbour County Deputy Sheriff Paul Motzenbecker, and several other law enforcement officers were conducting a traffic roadblock/checkpoint on Alabama Highway 10 near the 190 mile marker.  Trooper Nelson testified earlier that same day he applied for and received approval to set up the road block from Corporal John Helms.  The road block was set up to check whether the cars operated in the area of the checkpoint were in compliance with Alabama law - i.e. whether the driver had a driver's license, insurance, and registration of the vehicle.  If the person could not produce them immediately, he or she was instructed to pull off to the side of the road to find the item or receive a citation.

While returning from a state court appearance stemming from the November 6, 2008

stop, Smith was stopped at the roadblock.  He was driving a different vehicle than the one he used on November 6, 2008.  Smith was unable to immediately produce all the requested documents.  He was instructed to pull off to the side to continue looking for the necessary documents.  At this point, the officers heard a gunshot go off, but they were uncertain initially where it came from.  It was later determined that the gun shot came from a handgun that was run over by another vehicle approximately 75 yards before the roadblock.  Just prior to hearing the gun shot, Trooper McCord recognized Smith from the prior November 2008 interaction.  After hearing the gunshot, Trooper McCord asked Smith to exit the vehicle and testified that because he knew Smith had a propensity to carry firearms, he did a quick pat down for officer safety.  He then instructed Trooper Nelson to follow up with a more thorough frisk to include a removal of the defendant's shoes.  Trooper McCord further testified that he could again detect the smell of marijuana in Smith's vehicle.  During the second pat down, Trooper Nelson found a digital scale and a bag of marijuana.  The officers then searched Smith's vehicle and found 2 plastic bags of crack cocaine in the center console.  Officer Motzenbecker also went to the area where they heard the gunshot and found 5 rounds of .380 caliber ammunition and a .380 caliber firearm than had been crushed by a tractor trailer.  Smith was given his *Miranda* warnings and then put Smith on the phone with  Agent Tim Fitzpatrick.  Smith was then arrested for possession of a controlled substance.

**C.    Motion to Suppress**

On September 28, 2009, Smith filed his motion to suppress wherein he asserts (1) his

statements were obtained in violation of the Fifth Amendment and (2) the searches of his person and vehicle violated the Fourth Amendment.  Therefore the evidence obtained from the search and any subsequent statements should be suppressed.  Specifically, Smith asserts no probable cause existed to search Smith's person or vehicle at either stop and that because he was not given *Miranda* warnings, all the statements must be suppressed.

At the suppression hearing on October 27, 2009, Trooper McCord, Trooper Faulkner, Trooper Nelson, and Dr. Richard Doty all testified.  Dr. Richard Doty is the director of the Smell and Taste Center at the University of Pennsylvania School of Medicine in Philadelphia and a professor within the Department of Otolaryngology, Head, and Neck Surgery.  In addition to the testimony, numerous exhibits were presented including a videos of both stops. The pleadings, testimony, and exhibits were all considered in the Court's review of the suppression motion.

## II.   DISCUSSION AND ANALYSIS OF FIFTH AMENDMENT ASSERTIONS

It has long been held that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966 ).  Commonly known as a *Miranda* warning, prior to interrogation a defendant must be given a warning about his constitutional rights.

As to the November 6, 2008 stop, no *Miranda* warnings were given to Smith while

in custody prior to the questioning.  The United States concedes that all the statements made by Defendant Smith are therefore inadmissable.  The Court agrees.

As to the January 20, 2009 stop, the video evidence clearly shows that Trooper McCord read Smith his rights after handcuffing him at the stop.  Therefore, the statements are not due suppression due to Fifth Amendment violations.  Smith acknowledged this when he amended his original motion to suppress and again in his post-hearing brief.  As such, the Court turns to Smith's assertions of Fourth Amendment violations.

### III.   DISCUSSION AND ANALYSIS OF FOURTH AMENDMENT ASSERTIONS

Smith seeks suppression under the Fourth Amendment, which guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST. AMEND. IV.  Warrantless searches and seizures are per se unreasonable unless an exception applies.  *Arizona v. Gant*, 129 S.Ct. 1710, 1716, 173 L.Ed.2d 485 (2009) (quoting *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967)).  Because there are two separate searches in this case, the Court will address each in turn.

### A.   November 6, 2008

The record is clear that Smith was lawfully stopped by Trooper McCord for a window tint violation.  As such, the legitimacy of the stop itself is not in question.  *See Whren v. United States*, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996) ("As a general matter, the decision to stop an automobile is reasonable where the police have

probable cause to believe that a traffic violation has occurred.").   Thus, the Court turns to the request by Trooper McCord for Smith to exit the vehicle and his subsequent actions.

### i.    Request to Exit Vehicle

"[O]nce an officer has briefly stopped a motor vehicle operator for the purpose of issuing a traffic violation (i.e., a ticket), the officer's continuing detention of the vehicle's occupants is authorized under the Fourth Amendment only if the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the intrusion." *United States v. Pruitt*, 174 F.3d 1215, 1220 (11th Cir. 1999) (citation and quotation marks omitted).  "When making a determination of reasonable suspicion, we must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing." *United States v. Perkins*, 348 F.3d 965, 970 (11th Cir. 2003) (quotation marks and citations omitted).  Therefore, the question before this Court is whether Trooper McCord could point to specific, articulable facts which justified the continued detention.

Trooper McCord testified and the video corroborates that Smith voluntarily disclosed that he had a firearm in the vehicle for which he had a permit to carry.  Trooper McCord and Trooper Faulkner could also see the handgun in the front seat of the vehicle.  Trooper McCord also testified that at this point, he could also detect the smell of green marijuana. Based on the totality of the circumstances including the firearm and smell of marijuana, Trooper McCord asked Smith to exit the vehicle and Smith complied.  The Court finds

Trooper McCord's testimony credible.

Smith called Professor Doty to testify regarding the human ability to smell marijuana. In a nutshell, Professor Doty testified that based on the amount of marijuana present on the defendant, the plastic packaging, and the additional barrier of Smith's clothing, Trooper McCord's ability to detect that small amount of marijuana would be next to nil.  However, as the Government aptly notes, Professor Doty was not actually at the scene and his analysis is limited to the amount of marijuana seized.  *See* Doc. 53 at ¶ 4.  Professor Doty acknowledged that marijuana can leave an odor and so there is no way for his testimony to consider whether the vehicle had ever had other larger quantities of marijuana in it.  In other words, as the Government points out "the vehicle[] could have literally reeked of the odor of marijuana."  *See* Doc. 53 at ¶ 4.  Therefore, Professor Doty's testimony does nothing to actually contradict the circumstances presented by Trooper McCord as Professor Doty cannot testify to the actual conditions of the vehicle on the day of the stop.  The Court finds Trooper McCord's testimony credible as to the fact he smelled marijuana coming from Smith's vehicle.[2]  Defendant avers an officer's assertion that he smells marijuana should not alone be sufficient to constitute probable cause to justify a search, seizure, and arrest, but Defendant acknowledges that Eleventh Circuit precedent forecloses this argument.  *See United States v. Lueck*, 678 F.2d 895, 903 (11th Cir. 1982) (noting that it is "clearly

---

[2]     Smith states that Trooper McCord's testimony about whether he actually detected the scent of marijuana is not to be believed.  The Court finds Trooper McCord's in-court testimony which included a rigorous cross-examination by defense counsel to be credible.

established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search."); *see also United States v. Salley*, 2009 WL 2391417 (11th Cir. 2009) (holding strong scent of marijuana furnishes reasonable suspicion for continued detention and also cites *Lueck* and its holding that the smell of marijuana also satisfies the higher probable cause standard.).

Even absent probable cause, a brief detention of a vehicle is reasonable within the meaning of the Fourth Amendment where it is conducted "in order to investigate a reasonable suspicion that such persons are involved in criminal activity." *United States v. Mikell*, 102 F.3d 470, 474 (11th Cir. 1996) (citing *Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1879, 20 L.Ed. 889 (1968) and *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990)); *accord United States v. Diaz-Lizaraza*, 981 F.2d 1216, 1220 (11th Cir. 1993) (citing *Terry*). To justify this intrusion, the reasonableness standard requires that the officer "be able to point to specific and articulable facts, which, when taken together with rational inferences from those facts, reasonably warrant that intrusion." *Mikell*, 102 F.3d at 474-75 (quoting *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880); *see also United States v. Powell*, 222 F.3d 913, 917 (11th Cir. 2000) (officer must have "a reasonable, articulable suspicion based on objective facts that the person has engaged in, or is about to engage in, criminal activity."). "The officer must be able to articulate more than an inchoate and unparticularized suspicion or hunch of criminal activity." *Illinois v. Wardlow*, 528 U.S. 119, 123-24, 120 S.Ct. 673, 676, 145 L.Ed.2d 570 (2000) (quoting *Terry*, 392 U.S. at 27, 88 S.Ct. 1868) (internal quotations

omitted); *Powell*, 222 F.3d at 917.  Moreover, "[w]hile 'reasonable suspicion' is a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence, the Fourth Amendment requires at least a minimal level of objective justification for making the stop." *Wardlow*, 528 U.S. at 123, 120 S.Ct. at 675-76 (citing *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)); *accord Diaz-Lizaraza*, 981 F.2d at 1220-21.  It may even be based on "commonsense judgment and inferences about human behavior." *Wardlow*, 528 U.S. at 125, 120 S.Ct. at 676; *Powell*, 222 F.3d at 917 (quoting *Wardlow*).  In other words, "[t]he process does not deal with hard certainties, but with probabilities.  Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as fact-finders are permitted to do the same - and so are law enforcement officers." *Sokolow,* 490 U.S. at 8, 109 S.Ct. at 1585-86 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)); *see also United States v. Hernandez*, 418 F.3d 1206, 1211 (11th Cir. 2005) (reaffirming officer's duty to investigate where reasonable suspicion exists).  Finally, the court must look to the "totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 274, 122 S.Ct. 744, 751, 151 L.Ed.2d 740 (2002).

The Court has already credited Trooper McCord's testimony that he smelled marijuana.  The smell of marijuana was sufficient to justify further investigation and as the

troopers already knew Smith had a weapon, it was proper to ask him to exit the vehicle.[3]  To be clear, the Court finds there was probable cause which justified the continued detention of the defendant.

### ii.    Search of Defendant's person

Next the Court turns to the pat down search of the defendant.  As Smith had already acknowledged the presence of the handgun and Trooper McCord testified he could smell marijuana, the officers were certainly entitled to "take reasonable action, based upon the circumstances, to protect themselves during investigative detentions."  *United States v. Hastamorir*, 881 F.2d 1551, 1556-57 (11th Cir. 1989) (citations omitted); *accord United States v. Hensley*, 469 U.S. 221, 235, 105 S.Ct. 675, 684, 83 L.Ed.2d 331 (1985).  Trooper McCord was authorized to conduct a pat down search of Smith's person as he had reason to believe that he was "dealing with an armed and dangerous individual." *United States v. Clay*, 483 F.3d 739, 743 (11th Cir. 2007) (quoting *Terry v. Ohio*, 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889 (1968)).

Smith asserts that under *Minnesota v. Dickerson*, 508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993), Trooper McCord's pat down exceed the permissible scope of *Terry*.  In *Dickerson*, the Supreme Court clarified that:

---

[3]    In *Pennsylvania v. Mimms*, 434 U.S. 106, 98 S.Ct. 300, 54 L.Ed.2d 331 (1977), an officer directed a motorist stopped for a minor traffic violation to get out of his car even though the officer had no reason to suspect the motorist was dangerous or armed.  The Supreme Court held that concern for the officer's safety outweighed the slight intrusion against the liberty of the motorist. *See Mimms*, 434 U.S. at 110-11, 98 S.Ct. at 333.  In the case before this Court, the officers already knew he had a gun as not only could the officers see it, but also Defendant admitted he had it.

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id*. at 375-76, 113 S.Ct. at 2137.  However, the Court also held it impermissible for an officer to determine something to be contraband only after "squeezing, sliding and otherwise manipulating the contents of the defendant's pocket" when the officer already knew the pocket contained no weapon.  *Id.* at 378, 113 S.Ct. at 2138.

In the case before this Court, Trooper McCord testified that he had already smelled marijuana and knew Smith had at least one weapon.  Therefore, a pat down was authorized under *Terry* and its progeny.  In the midst of the pat down, the video shows that Trooper McCord does start to manipulate the pocket of Smith's pants.  Contrary to Defendant's assertion, this is not when the drugs were actually discovered.  Rather, at the same time Trooper McCord is conducting the pat down, he asks "is there any reason why your vehicle smells like green marijuana?"  *See* Def. Ex. 1, Video at 4:15-4:20.  At that moment, Defendant immediately tried to flee the scene, but only made it a few feet before he is tackled by Trooper McCord.[4]

---

[4]        The Court notes that the Eleventh Circuit has explicitly held that "a *Terry* search may continue when an officer feels a concealed object that he reasonably believes may be a weapon." *United States v. Clay*, 483 F.3d 739, 744-45 (11th Cir. 2007) (citations omitted).  The pat down in question lasted 5 seconds as shown in the video.  However, the Court need not analyze whether Trooper McCord's 5 second search met the Eleventh Circuit's criteria as Defendant immediately attempted to flee which ended the pat down before it was concluded.  Further, the drugs were not actually removed from Defendant's person until after he was subdued post-arrest.  Thus, the

"[A] warrantless arrest by a law officer is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." *Devenpeck v. Alford*, 543 U.S. 146, 152, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004). Probable cause to arrest a suspect requires a greater certainty of criminal behavior than reasonable suspicion, but "does not require the same standard of conclusiveness and probability as the facts necessary to support a conviction." *United States v. Dunn*, 345 F.3d 1285, 1290 (11th Cir. 2003) (quoting *Wood v. Kesler*, 323 F.3d 872, 873 (11th Cir. 2003)). Specifically, "[p]robable cause to arrest exists when law enforcement officials have facts and circumstances within their knowledge sufficient to warrant a reasonable belief that the suspect had committed or was committing a crime." *United States v. Gordon*, 231 F.3d 750, 758 (11th Cir. 2000) (quoting *United States v. Gonzalez*, 969 F.2d 999, 1002 (11th Cir. 1992)).

In this instance, Trooper McCord had already detected the scent of marijuana and immediately after asking about it, Defendant Smith attempted to flee the scene and continued to resist officers until being subdued by a taser.  Upon consideration of the totality of the circumstances as described above and the applicable legal standards, the court finds there was sufficient basis to justify a finding of probable cause to arrest.

"It is well settled that a search incident to a lawful arrest is a traditional exception to the warrant requirement of the Fourth Amendment." *United States v. Robinson*, 414 U.S.

---

discovery of the drugs occurred during a search incident to arrest as further discussed below.

218, 224, 94 S.Ct. 467, 471, 38 L.Ed.2d 427 (1973). Such searches are reasonable not only because of the need to disarm the arrestee of any weapons that might be used to resist arrest or effect his escape, but also because of the need "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction." *Id.* at 226 (quoting *Chimel v. California*, 395 U.S. 752, 762-63, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685 (1969)); *see also Preston v. United States*, 376 U.S. 364, 367, 84 S.Ct. 881, 883, 11 L.Ed.2d 777 (1964) (citations omitted) ("Unquestionably, when a person is lawfully arrested, the police have the right, without a search warrant, to make a contemporaneous search of the person of the accused for weapons or for the fruits of or implements used to commit the crime."); *Carroll v. United States*, 267 U.S. 132, 158, 45 S.Ct. 280, 287, 69 L.Ed. 543 (1925) (citations omitted) ("When a man is legally arrested for an offense, whatever is found upon his person or in his control which it is unlawful for him to have and which may be used to prove the offense may be seized and held as evidence in the prosecution.").

As the Court has already determined Smith's arrest was valid, Troopers McCord and Faulkner were authorized to conduct a search incident to arrest. The search revealed a bag of crack cocaine, a bag of marijuana, and a set of scales which were in Defendant's pocket. The Supreme Court has also made it clear that *Terry* "affords no basis to carry over to a probable-cause arrest the limitations this Court placed on a stop-and-frisk search permissible without probable cause." *Robinson*, 414 U.S. at 228, 94 S.Ct. at 473. As such, the restraints of a *Terry* frisk and the more restrictive *Dickerson*, are not applicable to a search incident to

arrest.  Defendant Smith appears to assert that his flight is irrelevant to this Court's analysis because the prior frisk was unreasonable and therefore cannot be relied upon.  Smith cites to a case from the Third Circuit wherein the Court suppressed the discovery of a firearm after a defendant attempted to flee during a *Terry* frisk.  *See United States v. Brown*, 448 F.3d 239 (3d Cir. 2006).  Defendant's comparison, however, fails.  In *Brown*, the officer never had reasonable suspicion to conduct a *Terry* stop and the resulting pat down.  In the case before this Court, Trooper McCord clearly had not only reasonable suspicion, but also probable cause based on the smell of marijuana and the presence of the handgun.  Therefore, the analogy to *Brown* is fatally flawed.

Based on the above, the search of Defendant Smith passes constitutional muster and consequently the results should not be suppressed.

### iii.    Search of the Vehicle

Finally, the Court turns to the search of Smith's vehicle.  As noted above, a search incident to arrest is an exception to the warrant requirement.  Defendant Smith was arrested prior to the search of his vehicle.  Once arrested, Troopers McCord and Faulkner were permitted to conduct a search of the vehicle incident to arrest.  "Since the custodial arrest of a suspect based on probable cause is a reasonable intrusion under the Fourth Amendment, a search incident to the arrest requires no additional justification."  *See United States v. Goddard*, 312 F.3d 1360, 1364 (11th Cir. 2002).  A search incident to arrest also includes the right to search a vehicle occupied by the arrestee.  *New York v. Belton*, 453 U.S. 454, 460,

101 S.Ct. 2860, 2864, 69 L.Ed.2d 768 (1981).  Under that exception, "an officer may search a vehicle the arrestee has recently occupied even if the officer first makes contact with him after he has exited the vehicle.  *Thornton v. United States*, 541 U.S. 615, 617, 623-24, 124 S.Ct. 227, 2129, 2132, 158 L.Ed.2d 905 (2004).

Alternatively, another warrantless search exception is the automobile exception wherein officers can search any container within an operational car without a warrant as long as they have probable cause to believe that the container holds evidence of a crime.  *United States v. Magluta*, 418 F.3d 1166, 1182 (11th Cir. 2005) (citing *California v. Acevedo*, 500 U.S. 565, 579-80, 111 S.Ct. 1982, 1991, 114 L.Ed.2d 619 (1991) and *United States v. Watts*, 329 F.3d 1282, 1285 (11th Cir. 2003)).  No one disputes the vehicle driven by Smith was operational, thus the inquiry is limited to whether there was probable cause to believe there was evidence of a crime.  *See Watts*, 329 F.3d at 1286.  "Probable cause for a search exists when under the totality of the circumstances 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *Goddard*, 312 F.3d at 1363 (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983)).

As already discussed, it is "clearly established that the recognizable smell of marijuana gives rise to probable cause supporting a warrantless search."  *Lueck*, 678 F.2d at 903; *accord Salley*, 2009 WL 2391417.  Therefore, even beyond the search incident to arrest, the search is justified under the probable cause standard.  Therefore, the evidence should not be suppressed.

**B.      January 20, 2009**

Smith asserts several reasons that the fruits of the January 20, 2009 search should be suppressed.  The Court will address each in turn.

**i.      Constitutionality of the Roadblock**

The constitutionality of the roadblock was also somewhat addressed in the Order denying the Motion to Compel.  The Court will address it further here.  Smith asserts the roadblock violates the Fourth Amendment because (1) it was not conducted according to a neutral and objective plan, (2) it was more intrusive than constitutionally permitted, (3) impermissibly targeted insurance status, and (4) impermissibly sought to detect criminal activity.  *See* Doc. 51.

Vehicle stops at roadway checkpoints constitute a seizure within the meaning of the Fourth Amendment. *City of Indianapolis v. Edmond*, 531 U.S. 32,  40, 121 S.Ct. 447, 453, 148 L.Ed.2d 333 (2000).  However, "[t]he regularized manner in which established checkpoints are operated is visible evidence, reassuring to law-abiding motorists, that the stops are duly authorized and believed to serve the public interest."  *United States v. Martinez-Fuerte*, 428 U.S. 543, 559, 96 S.Ct. 3074, 3083, 49 L.Ed.2d 1116 (1976).  Thus, "stops for brief questioning routinely conducted at permanent checkpoints are consistent with the Fourth Amendment and need not be authorized by warrant." *Id*. at 566, 96 S.Ct. at 3087. The Fourth Amendment test "is reasonableness in light of all the circumstances."  *United States v. Prevo*, 435 F.3d 1343, 1345 (11th Cir. 2006).

(a)      **Neutral and Objective Plan**

Trooper Terry Nelson testified that the morning of January 20, 2009 he sought and obtained permission to conduct a checkpoint along Alabama Highway 10 near the 190 mile marker.  He testified that he followed the Department of Public Safety's policy when applying for the checkpoint and noted that this particular spot has been a known problem area with regard to vehicles being operated in contravention of Alabama law.  *See* Def. Ex. 6, Policy Order No. 25 (Driver License/Vehicle Inspection).  His request was approved by Corporal John Helms.  Trooper Nelson also testified that they set up a roadblock at that particular location on a "pretty regular basis" because it is a known problem area.  The Policy Manual provides that a supervisor must approve the time and location of a checkpoint prior to the implementation of the checkpoint.  *Id*. at p. 23.  Trooper Nelson's testimony establishes that he complied with this requirement.

The policy also requires that "[w]hen conditions permit, all traffic should be stopped at checkpoints to facilitate adequate inspection of vehicles and driver license information." *Id*. at p. 24.  Trooper Nelson testified that they sought to check every car.  Trooper McCord also testified that everyone would get stopped unless they got overwhelmed and then if there was a traffic or safety problem, they would send all the cars through.  Smith asserts that this violates the Fourth Amendment as it affords officers unconstitutional discretion.  The courts, however, have not insisted that all discretion be removed from field officers executing a roadblock.  *See, e.g. United States v. Diaz-Albertini*, 772 F.2d 654, 658 (10th Cir. 1985) (All

cars were stopped except when traffic on the interstate backed up to dangerous proportions.).

The ability of the officers to waive some cars through if there is a traffic or safety problem does provide the on-site officers with some discretion.  However, this is not the same type of random spot checks condemned by the Supreme Court in *Delaware v. Prouse*, 440 U.S. 648, 661, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660 (1979), which identified "standardless and unconstrained discretion" as "the evil" the Fourth Amendment is designed to protect against.  As a result, the Court finds the roadblock was conducted in accordance with a neutral and objective plan.

### (b)    Roadblock was Unconstitutionally Intrusive

Smith asserts the Department's policy providing for a vehicle inspection is unconstitutionally intrusive.  However, the Supreme Court has explicitly held that "the States have a vital interest in ensuring... that these *vehicles are fit for safe operation* [and that] licensing, registration, and vehicle inspection requirements are being observed." *Prouse*, 440 U.S. at 658, 99 S.Ct. at 1398 (emphasis added).  A brief visual inspection of a vehicle  at a checkpoint if properly administered is unquestionably an important aspect of ensuring dangerous automobiles are kept off the road.  *See id*.  As such, there is nothing before this Court that suggests the roadblock as conducted was unconstitutionally intrusive.

### (c)    Roadblock Impermissibly Targeted Insurance

Smith also asserts that the officers improperly checked for liability insurance.  As a matter of law, one may not operate any vehicle on the public roadway in Alabama unless the

driver has a valid driver's license; a registered vehicle; and liability insurance. *See* ALA. CODE § 32-6-1 (driver's license); ALA. CODE § 32-6-51 (Registration Tags);  ALA. CODE § 32-7A-4 (insurance).   Defendant states that "[i]nsurance inspection is not mentioned anywhere in *Prouse* or in any of the Supreme Court cases subsequently to address roadblocks."  *See* Doc. 51 at p. 18.  Put simply, Defendant is wrong.  *Prouse* specifically addresses the legitimate state interest in seeing that its citizens have insurance protection. *Prouse*, 440 U.S. at 658-59, 99 S.Ct. at 1398-99.  To quote: "[f]urthermore, we note that the State of Delaware requires a minimum amount of insurance coverage as a condition to automobile registration implementing its legitimate interest in seeing to it that its citizens have protection when involved in a motor vehicle accident."[5]  Like Delaware, Alabama requires its drivers to maintain a liability insurance policy, motor vehicle liability bond, or deposit of cash.  ALA. CODE § 32-7A-4.

Based on the above, the request for insurance did not exceed the constitutionally permissible scope of the roadblock and therefore the request for Smith to pull over because he could not find his insurance was not a Fourth Amendment violation.  Nor can Smith assert that he was impermissibly targeted given that the AST - 8C form filled out after the roadblocks completion showed that there were 20 persons cited for insurance violations.  *See* Def. Ex. 7.

---

[5]     The Court will assume Defendant's statement was a mere error and not an intentional attempt to mislead the Court.  However, the Court does find it interesting given that the above quotation immediately follows the block quotation cited in Defendant's brief.  *See* Doc. 51 at p. 18. The Court urges counsel to be more careful in the future when making absolute statements.

### (d)    Roadblock Impermissibly Sought to Detect Criminal Activity

Finally, Smith asserts the roadblock impermissibly seeks to uncover criminal activity. The Supreme Court has rejected roadblocks which had the primary purpose to uncover evidence of ordinary criminal wrongdoing. *Edmond*, 531 U.S. at 41-42, 121 S.Ct. at 454. However, the *Edmond* Court went on to suggest that the government's interest in highway safety may also justify driver's license and registration checkpoints, so long as the "primary purpose" of the roadblock was this important state interest, and not general crime control. *See id.* 531 U.S. at 38, 121 S.Ct. at 452. "To be valid a checkpoint, then, must reach beyond general crime control-either targeting a special problem such as border security[6] or a problem peculiar to the dangers presented by vehicles."[7] *United States v. Green*, 293 F.3d 855, 858 (5th Cir. 2002). As such, the court must determine whether the instant roadblocks "were reasonable in the light of the state's interest in conducting the roadblocks, the effectiveness of the operation in promoting that interest, and the level of intrusion on the individual's privacy caused by the checkpoints." *Merrett v. Moore*, 58 F.3d 1547, 1551 (11th Cir.1995) (*citing Brown v. Texas*, 443 U.S. 47, 50-51, 99 S.Ct. 2637, 2640, 61 L.Ed.2d 357 (1979)).

The roadblock here is fundamentally different than the roadblock discussed in *Edmond*. In *Edmond*, the checkpoint program unquestionably had the primary purpose of

---

[6]    *See Martinzez-Fuerte*, 428 U.S. at 566, 96 S.Ct. at 3087.

[7]    *See Michigan Dept. of State Police v. Sitz*, 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990) (finding sobriety checkpoints valid given the "balance of the State's interest in preventing drunken driving, the extent to which this system can reasonably said to advance that interest, and the degree of intrusion upon individual motorists who are briefly stopped.").

interdicting illegal narcotics. *Edmond*, 531 U.S. at 40-41, 121 S.Ct. at 453-54. It is clear from the testimony that the primary purpose of this roadblock was conduct license, insurance, and registration checks. Policy Order Number 25 does also state that an officer may conduct a "visual inspection of the vehicle interior to determine if contraband is being transported." *See* Def. Ex. 6 at p. 24. While the Court admits some concern that this general phrase presents the potential for abuse, there is nothing currently before this Court that shows this *particular* roadblock was conducted primarily in the general interest of crime control. Rather, the testimony presents the contrary. Trooper Nelson stated that the encounter is thirty seconds. Further testimony stated that only the persons who could not immediately find the appropriate documents (i.e. license, registration, and insurance) were instructed to pull over. Defendant Smith was instructed to pull over because he could not immediately produce the required documentation.[8] Applying the *Brown* analysis as articulated by the Eleventh Circuit, this Court finds the roadblock was reasonable in light of the state's interest in ensuring its drivers were acting in compliance with state traffic regulations including maintaining a driver's license, registration, and insurance. The roadblock was effective in promoting that

---

[8]     As the court finds the primary purpose of these roadblocks was constitutional, it is unnecessary to address the continued validity of the Eleventh Circuit's conclusion in *Merrett* that "a state may conduct a mixed-motive roadblock as long as one purpose presented for the roadblock could validly justify the roadblock." 58 F.3d at 1551. As noted by this Court previously, *Edmond* and *Merrett* appear to differ on this point. *See United States v. Davis*, 143 F.Supp.2d 1302, 1307 n. 4 (M.D. Ala. 2001) (Thompson, J.) "While it may be that this part of *Merrett*'s holding has been overturned, *Edmond* neither addresses, nor affects, that part of *Merrett*'s conclusion that courts should apply the *Brown v. Texas balancing* test to roadblocks." *Id.* (citing *Merrett*, 58 F.3d at 1551-54).

interest and the level of intrusion was not constitutionally impermissible.  As such, the Court determines that this roadblock passes constitutional muster.

ii.    **Search of Defendant's Person**

As discussed above, Smith was instructed to pull over because he was unable to immediately produce his proof of insurance.  While Smith was pulled over, officers heard a gun shot go off.  Trooper McCord also testified that he recognized Smith from their prior encounter.  Trooper McCord, because of the prior encounter, remembered Smith's propensity to carry a firearm and knew that a gunshot had just gone off.  Trooper McCord approached the vehicle to ask Smith to step out.  He then conducted a pat down search and handcuffed Smith.  Trooper McCord then requested that Trooper Nelson conduct a more thorough patdown including removal of Defendant's shoes.  Inside Smith's shoes was a bag of marijuana and an electronic scale.  Smith objects to the scope of the search in particular the removal of his shoes.

A pat down search for weapons is permitted where an officer "reasonably believes or suspects" the defendant is armed. *Ybarra v. Illinois*, 444 U.S. 85, 93, 100 S.Ct. 338, 62 L.Ed.2d 238 (1979).  Items the officer has a "reasonable expectation ... could be some type of weapon" may be seized. *United States v. Strahan*, 984 F.2d 155, 158 (6th Cir. 1993).  However, the search must be confined to weapons, not general evidence. *Id*.  Further, "[t]he search for weapons approved in *Terry* consisted solely of a limited patting of the outer clothing of the suspect for concealed objects which might be used as instruments of assault."

*Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 1904, 20 L.Ed.2d 917 (1968). "If a protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry*." *Dickerson*, 508 U.S. at 373, 113 S.Ct. at 2136 (citing *Sibron*, 392 U.S. at 65-66, 88 S.Ct. at 1904).

The search of Smith's person was clearly more than a pat down of the outer clothing. Smith was subjected to two separate pat downs including a removal of his shoes. While the officers had a legitimate interest in conducting a *Terry* frisk for officer safety, their search of defendant appeared to be exactly that - a full scale search. Despite the Government's assertion, no authority has been presented that the smell of marijuana constitutes probable cause to search the person.[9] Thus, under normal circumstances, this search would warrant suppression. *See United States v. Davis*, 313 F.3d 1300, 1202 (11th Cir. 2002) ("Evidence seized after an illegal seizure should be suppressed as the fruit of the poisonous tree."). However, the bag of marijuana and scales would have been inevitably seized during Smith's arrest once the search of the vehicle revealed the cocaine.

The inevitable discovery exception was adopted by the Supreme Court in *Nix v. Williams*, 467 U.S. 431, 104 S.Ct. 2501, 81 L.Ed.2d 377 (1984), and under it evidence that results from an illegal search or seizure is nonetheless admissible if "the information ultimately or inevitably would have been discovered by lawful means." *Id*. at 444, 104 S.Ct. at 2509. Specifically, the inevitable discovery doctrine is premised on the fact the "core

---

[9]     The Court has already discussed that the smell of narcotics does constitute probable cause to search the vehicle.

rationale" of the exclusionary rule is to deter police misconduct by ensuring that the prosecution is not put in a better position than it would have been in if no illegality had transpired. *Jefferson v. Fountain*, 382 F.3d 1286, 1295 (11th Cir. 2004) (citing *Nix*, 467 U.S. at 442-43, 104 S.Ct. at 2508). Thus, when the evidence inevitably would have been discovered, "'public interest in having juries receive all probative evidence of a crime' outweighs the need to discourage police misconduct." *Id*. at 1295-96 (quoting *Nix*, 468 U.S. at 443-44, 104 S.Ct. at 2508-09).

Trooper McCord testified and again the Court finds his testimony credible that he smelled marijuana when he was at Defendant's vehicle. As such, the officers could search Smith's vehicle as the officers had probable cause to believe it contained evidence of a crime. The search of the vehicle revealed two plastic bags of crack cocaine in the center console. Consequently, Smith would have been arrested and subject to a search incident to arrest. *See Robinson*, 414 U.S. at 224-29, 94 S.Ct. at 471-74. Had officers conducted their search of the car first instead of second, that's exactly what would have happened. Therefore, based on the inevitable discovery doctrine, the evidence should not be suppressed. *See e.g., United States v. Bohanon*, 629 F.Supp.2d 802, 808-09 (E.D. Tenn. 2009).

## IV.  CONCLUSION

Pursuant to the foregoing findings and conclusions, it is the RECOMMENDATION of the Magistrate Judge that:

(1)     Defendant Smith's *Motion to Suppress* (Doc. 28) be **GRANTED** as to the

statements made in connection with the November 6, 2008 stop.

(2)      Defendant Smith's *Motion to Suppress* (Doc. 28) be **DENIED** as to all issues.

It is further **ORDERED** that the parties shall file any objections to the said Recommendation not later than **November 30, 2009.** Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which the party is objecting. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and advisements in the Magistrate Judge's Recommendation shall bar the party from a de novo determination by the District Court of issues covered in the Recommendation and shall bar the party from attacking on appeal factual findings in the Recommendation accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *see Stein v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981)(*en banc*) (adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981).

DONE this 16th day of November, 2009.

/s/ Terry F. Moorer
TERRY F. MOORER
UNITED STATES MAGISTRATE JUDGE